IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF PUERTO RICO

WILLIAM CRUZ-MARTINEZ,

    Plaintiff,

    v.

MICHAEL J. ASTRUE, Commissioner of
the Social Security Administration,

    Defendant.

Civil No. 11-1946 (BJM)

## OPINION AND ORDER

Plaintiff William Cruz-Martínez ("Cruz") filed a complaint seeking judicial review of the decision of the defendant, Michael J. Astrue, Commissioner of the Social Security Administration ("SSA") ("Commissioner"), partially denying disability insurance benefits under sections 216(i) and 223(d) of the Social Security Act, 42 U.S.C §§ 416(i) and 423(d) (the "Act"). (Docket No. 1). Cruz claims to have been disabled since May 13, 2004, and the Commissioner determined that Cruz was disabled and entitled to benefits as of December 1, 2005, but not before. Cruz requests that judgment be reversed or, in the alternative, that the case be remanded to the Commissioner for further proceedings. Cruz filed a memorandum of law in support of his position. (Docket No. 19). The Commissioner answered the complaint (Docket No. 11) and filed a memorandum in support of his decision (Docket No. 22) . This case is before me on consent of the parties. (Docket Nos. 6-8). After careful review of the administrative record and the briefs on file, the Commissioner's decision that Cruz was not disabled prior to December 1, 2005 is affirmed.

## LEGAL STANDARD

The court's review is limited to determining whether the Administrative Law Judge ("ALJ")

employed the proper legal standards and focused facts upon the proper quantum of evidence.

Manso-Pizarro v. Sec'y of Health and Human Servs., 76 F.3d 15, 16 (1st Cir. 1996).  The ALJ's

findings of fact are conclusive when supported by substantial evidence, 42 U.S.C. § 405(g), but are

not conclusive when derived by ignoring evidence, misapplying the law, or judging matters entrusted

to experts.  Nguyen v. Chater, 172 F.3d 31, 35 (1st Cir. 1999); Ortiz v. Sec'y of Health and Human

Servs., 955 F.2d 765, 769 (1st Cir. 1991); Da Rosa v. Sec'y of Health and Human Servs., 803 F.2d

24, 26 (1st Cir. 1986).  The court "must affirm the [Commissioner's] resolution, even if the record

arguably could justify a different conclusion, so long as it is supported by substantial evidence."

Rodriguez-Pagán v. Sec'y of Health and Human Servs., 819 F.2d 1, 3 (1st Cir. 1987).  Written

reports submitted by non-examining physicians who merely reviewed the written medical evidence

are not substantial evidence, although these may serve as supplementary evidence for the ALJ to

consider in conjunction with the examining physician's reports. Irizarry-Sánchez v. Comm'r of Soc.

Sec., 253 F.Supp. 2d 216, 219 (D.P.R. 2003).

A claimant is disabled under the Act if he is unable "to engage in any substantial gainful

activity by reason of any medically determinable physical or mental impairment which can be

expected to result in death or which has lasted or can be expected to last for a continuous period of

not less than 12 months."  42 U.S.C. § 423(d)(1)(A).  Under the statute, a claimant is unable to

engage in any substantial gainful activity when he "is not only unable to do his previous work but

cannot, considering his age, education, and work experience, engage in any other kind of substantial

gainful work which exists in the national economy."[1]  42 U.S.C. § 423(d)(2)(A).  In determining

---

[1] The phrase "work which exists in the national economy" means "work which exists in significant numbers either in the region where such individual lives or in several regions of the country." 42 U.S.C. § 423 (d)(2)(A).

whether a claimant is disabled, all of the evidence in the record must be considered.  20 C.F.R. §

404.1520(a)(3).

A five-step sequential evaluation process must be applied to every case in making a final

determination as to whether a claimant is disabled.  20 C.F.R. § 404.1520; see also Bowen v.

Yuckert, 482 U.S. 137, 140-42 (1987); Goodermote v. Sec'y of Health and Human Servs., 690 F.2d

5, 6-7 (1st Cir. 1982).  In step one, the ALJ determines whether the claimant is engaged in

"substantial gainful activity."  If he is, disability benefits are denied.  20 C.F.R. § 404.1520(b).  If

he is not, the ALJ proceeds to step two, through which it is determined whether the claimant has a

medically severe impairment or combination of impairments.  20 C.F.R. § 404.1520(c).  If the

claimant does not have a severe impairment or combination of impairments, the disability claim is

denied.  However, if the impairment or combination of impairments is severe, the evaluation

proceeds to the third step, in which it is determined whether the claimant has an impairment

equivalent to a specific list of impairments contained in the regulations' Appendix 1, which the

Commissioner acknowledges are so severe as to preclude substantial gainful activity.  20 C.F.R. §

404.1520(d); 20 C.F.R. pt. 404, subpt. P, App. 1.  If the impairment meets or equals one of the listed

impairments, the claimant is conclusively presumed to be disabled.  If the impairment is not one that

is conclusively presumed to be disabling, the evaluation proceeds to the fourth step, through which

the ALJ determines whether the impairment prevents the claimant from the work he has performed

in the past.  If the claimant is able to perform his previous work, he is not disabled.  20 C.F.R. §

404.1520(e).  If it is determined that the claimant cannot perform this work, then the fifth and final

step of the process calls for a determination of whether the claimant is able to perform other work

in the national economy in view of his residual functional capacity ("RFC"), as well as age,

education, and work experience.[2]  If the claimant cannot, then he is entitled to disability benefits.

20 C.F.R. § 404.1520(f).

The burden is on the claimant to prove that he is disabled within the meaning of the Act.  See

Bowen, 482 U.S. at 146-147, n.5.  The claimant has the burden, under steps one through four, of

proving that he cannot return to his former employment because of the alleged disability.  Santiago

v. Sec'y of Health and Human Servs., 944 F.2d 1, 5 (1st Cir. 1991).  Once a claimant has

demonstrated a severe impairment that prohibits return to his previous employment, the

Commissioner has the burden, under step five, to prove the existence of other jobs in the national

economy that the claimant can perform.  Ortiz v. Sec'y of Health and Human Servs., 890 F.2d 520,

524 (1st Cir. 1989).

### FACTUAL AND PROCEDURAL BACKGROUND

Cruz was born on May 4, 1951.  (Transcript ["Tr."] 34, 71-72, 120, 143).  He completed two

years of college (Tr. 88) and worked as a factory laborer, site leader, electronics technician, and

watch leader (Tr. 83, 106) before allegedly becoming unable to work.  (Tr. 31).  Cruz claims to have

been disabled since May 13, 2004 due to major depression, lumbar levoscoliosis and spondylosis,

degenerative disc disease ("DDD") at L4-L5, and a Schmorl's node formation involving the inferior

end plate of 13 and superior 14.  (Tr. 23, 25, 71-72, 82).  He was 53 years old[3] on the alleged onset

date of disability.  (Tr. 31).

On July 30, 2001, Cruz was evaluated by a physical therapist, who recommended lower back

---

[2] An individual's RFC is his ability to do physical and mental work activities on a sustained basis despite limitations from his impairments.  20 C.F.R. § 404.1520(e) and 404.1545(a)(1).

[3] The ALJ states that Cruz was 54 years old on the alleged onset date.  (Tr. 31).

exercises twice a day.  (Tr. 175-176).  Records from "Centro Fisioterapia y Rehabilitación" also reflect that Cruz was evaluated and received physical treatment for muscle spasms in shoulders and arms, and for lower back and right hand pain from July 24, 2001 to September 5, 2003.  (Tr. 177-203).  From July 8, 2004 to June 15, 2009, Dr. Carmen G. Pujols-González treated Cruz with pharmacotherapy for neuropathy, lumbar levoscoliosis and spondylosis, DDD L4-L5, and a Schmorl's node formation involving the inferior end plate of 13 and superior 14.  (Tr. 85, 87-88, 137, 139, 163, 169-170, 174, 307-338, 351-357).  On July 8, 2004, Dr. Pujols found Cruz to be alert, conscious, and oriented.  (Tr. 333-336).  On January 22, 2006, Dr. Pujols reported that Cruz suffered from reactive depression.  (Tr. 311-312).  On February 10, 2008, Dr. Pujols reported that Cruz suffered recurrent depression and generalized anxiety.  (Tr. 307-308).  On June 22, 2009, Dr. Pujols assessed that Cruz's symptoms impacted his ability to perform work related activities in that he was totally disabled to walk, sit, and lift weight, and that they had improved very little or at all even with treatment.  (Tr. 353-355).  From December 9, 2005 to November 9, 2007, Dr. Alfredo Perez-Canabal, neurologist, also treated Cruz for the same physical conditions.  (Tr. 137, 139, 169-170, 174, 279-292).  Meanwhile, Cruz received treatment by Dr. Roberto García, physiatrist, from February 23 to May 16, 2006 (Tr. 227-231); physical therapy at "Centro Terapia Física Mocano" from December 8 to 21, 2006 (Tr. 268-275); and by Dr. Ismael Dávila at a chiropractic clinic from July 23 to 26, 2007 (Tr. 276-278).

From February 24, 2005 to June 9, 2009, Dr. Ariel Rojas-Davis, psychiatrist, treated Cruz with pharmacotherapy and psychotherapy for major depressive disorder, recurrent, severe with psychotic features.  (Tr. 85, 87, 138-139, 163, 169-170, 174, 293-98, 340-350).  Dr. Rojas prepared a mental RFC assessment on December 14, 2005 (Tr. 204-210) and another on June 22, 2009 (Tr.

342-350).  Dr. Rojas informed in 2005 that Cruz suffered from anhedonia, appetite disturbance with

weight change, decreased energy, suicidal thoughts, feelings of guilt or worthlessness, mood

disturbance, difficulty thinking or concentrating, psychomotor agitation or retardation, memory

impairment, and sleep disturbance.  (Tr. 204).  Dr. Rojas opined that the prognosis was poor.  (Tr.

206).   Dr. Rojas assessed that Cruz's ability to do work-related activities on a day-to-day basis in

a regular work setting was markedly limited.  (Tr. 206, 208, 295-298).  In 2009, Dr. Rojas assessed

that Cruz was unable to meet competitive standards of unskilled, semiskilled, and skilled work (Tr.

343), that his poor concentration and diminished ability to pay attention limited his ability to perform

duties (Tr. 344), that he had marked functional limitations (Tr. 345), and that his depressive

condition made him perceive pain as being more severe (Tr. 346).

Cruz applied for a period of disability and disability insurance benefits on February 14,

2006.[4]  (Tr. 23, 71-76, 120).  He acquired sufficient quarters of coverage to remain insured through

December 31, 2009.[5]   (Tr. 23, 25, 79, 164).  A Function Report (Tr. 90-105) and a Work History

Report (Tr. 106-119) were also prepared, dated January 25 and 27, 2006, respectively.  Cruz claimed

to feel depressed and anxious, and to suffer from severe pain in his lower back, legs, neck and

shoulders, frequent leg cramps, and loss of arm and leg strength.  (Tr. 82).  Disability Reports (Forms

SSA-3367 and SSA-3368) were prepared on February 18, 2006, and Disability Determination

Services ("DDS") capability development was recommended.  (Tr. 81-89, 120-122).

A consultative neurological evaluation was performed on April 18, 2006 by Dr. Samuel

---

[4]The application was signed by Cruz on January 25, 2006, but was filed on February 14, 2006.

[5]Two field office disability reports indicated that the date last insured is December 31, 2008.
(Tr. 120, 143).

**William Cruz-Martínez v. Michael J. Astrue, Commissioner of Social Security**               Page 7
Civil No. 11-1946 (BJM)

Méndez-Figueroa, who diagnosed chronic lumbalgia and cervicalgia, lumbosacral syndrome, and

bilateral carpal tunnel syndrome. (Tr. 213-221). A consultative roentgenological report was also

submitted that day by Dr. Ángel R. Colón-Loyola, who found Cruz to have osteopenia, no

compression deformities, and grossly preserved disc spaces. (Tr. 221). A consultative psychiatric

evaluation was prepared by Dr. Armando I. Caro on May 3, 2006, who diagnosed that Cruz had a

major depressive disorder, with moderate pain disorder associated with a general medical condition,

capacity to handle his own funds, and a poor prognosis. (Tr. 222-226).

On May 22, 2006, an SSA examiner requested that physical and mental RFC assessments

be prepared. (Tr. 232-235). Dr. Idalia Pedroza, a consultative internist, submitted a physical RFC

assessment on June 13, 2006. (Tr. 236-244). Dr. Pedroza diagnosed that Cruz had a lumbar disc

bulge, with chronic back pain (Tr. 237), and found the following exertional limitations: occasionally

lift and/or carry 50 pounds, frequently lift and/or carry 25 pounds, stand, walk, and /or sit (with

normal breaks) for a total of about 6 hours in an 8-hour workday, and push and/or pull unlimitedly

(Tr. 238). Dr. Orlando Reboredo, a consultative psychiatrist, submitted a mental RFC assessment

on June 21, 2006. (Tr. 245-263). Dr. Reboredo found that Cruz suffered from a major depression,

moderate, due to medical conditions (Tr. 245); that he had moderate limitations to activities of daily

living, social functioning, and in maintaining concentration, persistence, or pace; and that there were

no episodes of decompensation. (Tr. 256). Dr. Reboredo assessed that Cruz had the mental RFC

to learn, understand, remember, and execute simple instructions; that he can sustain pace and

attention; persist at work activities during a regular workday or workweek without help or

supervision; that he can adjust to changes in work routines and environments; and that he can

interact with the public, coworkers, and supervisors. (Tr. 262).

William Cruz-Martínez v. Michael J. Astrue, Commissioner of Social Security                    Page 8
Civil No. 11-1946 (BJM)

Cruz's application was denied initially on June 22, 2006 (Tr. 34), with a finding that Cruz

had the RFC to perform medium work, with simple repetitive tasks, and that he was able to do past

relevant work.  (Tr. 38-43, 146).  Cruz filed for reconsideration on August 16, 2006.  (Tr. 44).  A

Disability Report on Appeal was prepared on September 25, 2006.  (Tr. 135-142, 167).   Cruz

claimed that his  condition had worsened since August 26, 2005, and that he now suffered new

limitations as a result of his conditions. He claimed that he could not move as freely as before; that

he could not bend, twist, make repetitive movements or remain in the same position for more than

five minutes; that he could not concentrate and forgot things easily; and that he was always desperate

and afraid of the voices he hears.  (Tr. 136).  He did not claim new illnesses, injuries, or conditions.

(Tr. 136).  The Field Office recommended DDS capability development on September 25, 2006.  (Tr.

143-145).

Another Function Report was filed on January 25, 2008.  (Tr. 147-162).  On March 6, 2008,

the case was referred to Dr. Eileen Zayas, specialist in family medicine, and Dr. Sadia L. González-

Santana, psychiatrist, for a case analysis on reconsideration.  Dr. Zayas affirmed Dr. Pedrosa's

physical RFC assessment, and Dr. González affirmed Dr. Reboredo's mental RFC assessment.  (Tr.

299-302).  Cruz's application was denied upon reconsideration on March 10, 2008 (Tr. 35), finding

that Cruz had the RFC to perform unskilled medium work and that, although he was not able to do

past relevant work, he could perform other jobs available in the national economy.  (Tr. 45-48).

On April 21, 2008, Cruz filed a motion for remand, claiming that he had submitted on appeal

medical evidence of treatment for a mental condition which was not considered by the DDP.  (Tr.

52).  Another Disability Report on Appeal was filed on April 28, 2008.  (Tr. 167-173).  Cruz claimed

that his condition had worsened since August 9, 2006, and claimed new limitations as a result of his

conditions.  He could not move because of the constant back pain and leg weakness; could not be

in the same position for too long, or perform repetitive movements, or exert himself; could not use

stairs; felt useless, forgot things, and could not concentrate.  Cruz also claimed a new condition,

Herniated Nucleus Pulposus Cervical.  (Tr. 168).  The Field Office again recommended DDS

capability development.  (Tr. 164-165).

On May 9, 2008, Cruz requested a hearing by an ALJ.  (Tr. 50-51).  The hearing was held

on June 25, 2009.  (Tr. 23, 58, 351-357).  A vocation expert ("VE"), Luis Serrano-Vega, testified

that the exertional level of Cruz's former jobs fell between medium and heavy, except for one job

as a teacher, which only lasted for a couple of months, that could be described as light.  (Tr. 364).

The ALJ asked the VE if a person with a maximum exertion level of light, who can perform simple

repetitive tasks, would be able to perform any of Cruz's past jobs.  The VE testified that such a

person would not be able to perform any of Cruz's past jobs, including the teaching position, because

although it was of a light exertional level, the tasks were not simple and repetitive; that there is no

transferability of skills in any of those jobs, and that such a person would have to make very

significant adjustments to be able to transfer skills.  (Tr. 365).  The ALJ then asked the VE if a

person with Cruz's work experience, age, and academic profile, with a maximum exertional capacity

of light, with a maximum mental capacity of simple, repetitive instructions, who is not able to have

any contact with the public, who may have occasional contact with supervisors and coworkers, who

is younger than 55 years of age[6], and who does not qualify for the grid (rules 20.01 and 202.06)

---

[6] A claimant's chronological age is considered a vocational factor that is used, in combination
with that person's RFC, education, and work experience, to determine disability under section
404.1520(g)(1).  20 C.F.R. § 404.1563(a).  Cruz was 53 years old on the alleged onset date of disability,
which made him a "person closely approaching advanced age" or between 50 and 54 years old as defined
in section 404.1563(d).  Under this category, age, a severe impairment, and limited work experience may

would be able to perform any of Cruz's previous jobs.  The VE answered that such a person would

not be able to perform any of Cruz's previous jobs, but would be able to perform other jobs in the

national or regional economy; that is, simple and repetitive jobs, with no interaction with the public,

and occasional contact with supervisors, such as assembler of printed products, sorting machine

operator, and box sealing inspector.  (Tr. 365-367).  Counsel asked the VE if a person with all the

limitations previously mentioned by the ALJ, plus an extremely limited tolerance to criticism and

supervision, as per Dr. Rojas's opinion at Exhibits 3F and 16F of the record[7], would be able to

function occupationally in other jobs in the national economy.  The VE answered that this person

would not be able to perform any job in the national economy.  (Tr. 367-368).  Counsel also asked

the VE to consider if a person with additional non-exertional vocational limitations as listed in

Ruling 85.15, and as opined by Dr. Rojas at Exhibits 3F and 16F , such as not being able to be

present at work and sustain attention and concentration for more than two hours a day would be able

to function occupationally in other jobs in the national economy.  The VE answered that these

limitations would severely affect a person's performance in jobs found in the national economy and

that individual would not be able to perform those jobs or any jobs.  (Tr. 368-369).  Counsel also

---

seriously affect that person's ability to adjust to other work. This is relevant because the ALJ determined
that a borderline age situation existed and that after December 1, 2005, Cruz was a "person of advanced
age" or age 55 or older as defined in section 404.1563(e). A borderline age situation exists when (1) the
claimant is within a few days or months of a higher age category; and (2) use of the higher age category
would result in a finding of disability. See Application of the Medical-Vocational Guidelines in
Borderline Age Situations, Soc. Sec. Admin., Office of Hearings and Appeals, Hearings, Appeals and
Litigation Law Manual (HALLEX) II-5-3-2.

[7]"And if we take into consideration that according to Dr. Ariel Rojas Davis, exhibit 3F and 16F,
respectively, he indicates that in regards to his capacity to tolerate criticism associated with supervision,
it is markedly limited; in fact, he says it is extremely limited."  Exhibit 3F is the 2005 RFC assessment.
(Tr. 204-210). Exhibit 16F is unsigned and undated, but spans the treatment period of February 24, 2005
to December 13, 2007.  (Tr. 295-298).

asked the VE to consider the physical limitations as described by Dr. Pujols, and the pain Cruz experienced, and asked if such a person would be able to function occupationally in any job available in the national economy. The VE answered that this person would not be able to perform the work activities. (Tr. 371).[8]

The ALJ issued a written decision on July 14, 2009 finding that Cruz was not disabled prior to December 1, 2005, but became disabled on that date under sections 216(i) and 223(d) of the Act and continued to be disabled through the date of the decision. (Tr. 23). The ALJ found that Cruz has the following severe impairments: mild bilateral carpal tunnel syndrome, cervical myositis, bilateral radiculopathy at the C5-C6 level, lower back pain, and central discs bulging at the L4-L5 and L5-S1 levels. (Tr. 25). The ALJ determined that Cruz had the RFC to perform light, unskilled, simple work activity, that does not require contact with the public and/or frequent contact with coworkers and supervisors. (Tr. 15-33). The ALJ found that Cruz was unable to perform past relevant work, but that there were a significant number of jobs in the national economy that he could have performed prior to December 1, 2005. (Tr. 30).

On September 2, 2009, Cruz requested review of the ALJ's decision. (Tr. 14). On July 25, 2011, the Appeals Council denied the request. (Tr. 6-12). Cruz appealed the ALJ's decision as the Commissioner's final decision.

## DISCUSSION

Cruz argues that the ALJ did not deploy the correct legal standards because the ALJ (1) posed

---

[8]Although parts of the VE's answers to the hypothetical questions posed by the ALJ and counsel appear as inaudible in the hearing transcript, the Commissioner concedes in his memorandum of law that the VE testified that a person with the non-exertional limitations contained in the questions posed by counsel would not be able to perform work in the national economy. (Docket No. 22, p. 14-16).

a hypothetical question to the VE that did not include limitations that existed before December 1,

2005 as reported by the treating psychiatrist, (2) did not ask the VE a question that addressed the

erosion of the occupational base by Cruz's exertional and non-exertional limitations, as per SSR 85-

15 and SSR 96-9p, and (3) did not offer "good reasons" for disregarding treating physicians' reports,

and therefore did not comply with the burden of demonstrating the existence of alternate work.

(Docket No. 19, p. 2-3, 10-15, 21).  The Commissioner argues that there is substantial evidence in

the record to support his decision that Cruz is not entitled to disability benefits for that time period

and requests that his decision be affirmed.  (Docket No. 22, p. 11, 22).  This court must determine

whether the record contains substantial evidence to support the ALJ's determination at step five of

the sequential evaluation process that Cruz was not disabled within the meaning of the Act from May

13, 2004, his alleged onset date, to December 1, 2005, the date that the ALJ found Cruz to be

disabled.

The function of weighing evidence and determining if a person meets the statutory definition

of disability is the Secretary's.   20 C.F.R. § 404.1527(d).  It is the Commissioner's responsibility

to determine issues of credibility, draw inferences from the record evidence, and resolve conflicts

in the evidence.  Ortiz, 955 F.2d at 769, citing Rodríguez v. Sec'y of Health & Human Servs., 647

F.2d 218, 222 (1st Cir. 1981); Evangelista v. Sec'y of Health & Human Servs., 826 F.2d 136, 141

(1st Cir. 1987) (citations omitted).  Generally, more weight is given to the opinion of a treating

source if it "is well supported by medically acceptable clinical and laboratory diagnostic techniques

and is not inconsistent with the other substantial evidence" in the record.   20 C.F.R. §

404.1527(c)(2).  However, it is within the ALJ's discretion to credit the more positive reports of

claimant's mental condition. See 20 C.F.R. § 404.1527(d)(2)-(5); Román-Román v. Comm'r of Soc.

Sec., 114 F. App'x 410, 411-12 (1st Cir. 2004), citing Rodríguez-Pagán, 819 F.2d at 2-3.  The ALJ

may reject the conclusions of a treating physician regarding disability where contradictory medical

evidence appears in the record.  Arias v. Comm'r of Social Security, 70 Fed. Appx. 595, 598 (1st

Cir. 2003), citing Keating v. Sec'y of Health & Human Servs., 848 F.2d 271, 275-76 (1st Cir. 1988).

*Hypothetical Question*

In this case, the ALJ used a VE to determine whether substantial gainful activity existed in

the national economy that Cruz could have performed.  The VE's testimony is relevant to the inquiry

insofar as the hypothetical questions posed by the ALJ to the VE accurately reflect the claimant's

functional work capacity.  See Arocho v. Sec'y of Health and Human Servs., 670 F.2d 374, 375 (1st

Cir. 1982).  A proper hypothetical question is one that "incorporates reasonably all disabilities of the

claimant recognized by the ALJ,  which "accurately reflects all of [the claimant's] impairments and

the degree of their severity." Bowling v. Shalala, 36 F.3d 431 (5th Cir.1994).  In other words, a VE's

testimony must be predicated on a supportable RFC assessment.  See 20 C.F.R. § 404.1520(g)(1).

An individual's RFC is his ability to do physical and mental work activities on a sustained basis

despite limitations from his impairments.  20 C.F.R. §§ 404.1520(e), 404.1545(a)(1).  Therefore, I

must determine if the ALJ properly assessed Cruz's RFC in order to determine if the question posed

to the VE contained all of Cruz's limitations.

The ALJ found that Cruz had the RFC to perform light,[9] unskilled,[10] simple work activity,

---

[9] "Light work involves lifting no more than 20 pounds at a time with frequent lifting or carrying of objects weighing up to 10 pounds.  Even though the weight lifted may be very little, a job is in this category when it requires a good deal of walking or standing, or when it involves sitting most of the time with some pushing or pulling of arm or leg controls.  To be considered capable of performing a full or wide range of light work, you must have the ability to do substantially all of these activities.  If someone can do light work, we determine that he or she can also do sedentary work, unless there are additional limiting factors such a loss of fine dexterity or inability to sit for long periods of time." 20 C.F.R. § 404.1567(b).

[10] "Unskilled work is work which needs little or no judgment to do simple duties that can be learned on the job in a short period of time.  The job may or may not require considerable strength. ... A person does not gain work skills by doing unskilled jobs." 20 C.F.R. § 404.1568(a).

that did not require prolonged sitting, standing, walking, and/or following and executing complex

instructions, and that did not require contact with the public and/or frequent contact with coworkers

and supervisors. (Tr. 29). It is well within an ALJ's authority to weigh the evidence, to determine

the credibility of the plaintiff's subjective complaints, and to use only credible evidence in posing

a hypothetical question to a vocational expert. 20 C.F.R. § 404.1527(c)(2); Arocho, 670 F.2d at 375

(1st Cir. 1982) (ALJ must decide what testimony will be credited when forming the hypothetical

questions). In weighing the opinions and medical evidence relative to the issue of whether a

claimant is entitled to benefits, the ALJ must consider relevant factors such as the length, nature, and

extent of the treating relationship, the frequency of examination, the medical specialty of the treating

physician, the opinion's evidentiary support, and its consistency with the record as a whole. 20 C.F.R.

§ 404.1527(d)(2)-(6). Therefore, a medical opinion of an examining source is entitled to more

weight than a non-examining source, and a treating physician's opinion is entitled to more weight

than a consultative physician who only examined the claimant one time. 20 C.F.R. §

404.1527(d)(1)-(2).

The opinion of a treating physician should be given controlling weight if it is well-supported

by medically acceptable clinical and laboratory diagnostic techniques and is not inconsistent with

the other substantial evidence in the record. Soto-Cedeno v. Astrue, 380 Fed. Appx. 1, 3 (1st Cir.

2010), quoting 20 C.F.R. § 404.1527(d)(2); SSR 96-2p. Among other factors, an opinion may be

given more or less weight depending on its supportability: "The more a medical source presents

relevant evidence to support an opinion, particularly medical signs and laboratory findings, the more

weight we will give that opinion....we will evaluate the degree to which these opinions consider all

of the pertinent in your claim, including opinions of treating and other examining sources." 20

William Cruz-Martínez v. Michael J. Astrue, Commissioner of Social Security          Page 15
Civil No. 11-1946 (BJM)

C.F.R. § 404.1527(d)(3). Another relevant factor is "the extent to which an acceptable medical

source is familiar with the other information in [a claimant's] case record." 20 C.F.R. §§

404.1527(d)(3), 404.1527(d)(6). The resolution of conflicts in the medical evidence is reserved for

the Secretary to determine. See Lizotte v. Sec'y of Health and Human Servs. 654 F.2d 127, 130 (1st

Cir. 1981); see also Torres Gutierrez v. Sec'y of Health, Education and Welfare, 572 F. 2d 7, 8 (1st

Cir. 1978); Gonzalez v. Richardson, 455 F.2d 953-54 (1st Cir. 1972).

As to the non-exertional limitations that Cruz may have suffered before December 1, 2005,

there is evidence on record from two treating physicians. On July 8, 2004, Dr. Pujols found Cruz

to be alert, conscious, and oriented, with no neuropsychiatric complaints. (Tr. 335-336). There is

no evidence on record as to any non-exertional limitations for the time period between July 8, 2004

and February 24, 2005. "We view these gaps in the medical record as 'evidence.'" Ortiz, 955 F.2d

at 769. Therefore, the ALJ's finding of non-disability is clearly supported by substantial evidence,

at least as to the time period before February 24, 2005.

The period from February 24 to December 1, 2005 is a somewhat closer call. Dr. Rojas, a

treating physician, prepared an RFC assessment dated December 14, 2005 based on the time he

treated Cruz between February 24 and October 10, 2005. That assessment is accompanied by a signs

and symptoms checklist, a treatment summary, a diagnosis, and a prognosis. However, no notes,

observations, or progress reports by Dr. Rojas for this time period are available on the record, which

severely reduces the weight to be accorded to these findings. In any case, that RFC assessment found

Cruz to have the following non-exertional limitations on his ability to perform work-related activities

on a day-to-day basis in a regular work setting: a markedly limited capacity to maintain attention and

concentration for extended periods, to carry out short and simple instructions, to perform at a

consistent pace, accept instructions, respond appropriately to criticism from supervisors, to deal with

normal work stress, and absenteeism of more than four days per month.  (Docket No. 19, p. 6; Tr.

206-208).

As to Cruz's claim that the hypothetical question posed to the VE did not include limitations

that existed before December 1, 2005 as reported by Dr. Rojas, I find that the ALJ did not err in

discounting Dr. Rojas's RFC assessment in formulating the hypothetical question.  As noted, Dr.

Rojas's assessment is not accompanied by progress notes or other findings corresponding to each

of his evaluations that took place prior to December 1, 2005.  Moreover, and especially in light of

this lack of documentation, the ALJ could reasonably give greater credit to Dr. Reboredo's contrary

RFC assessment. "It is the responsibility of the Secretary to determine issues of credibility and to

draw inferences from the record evidence."   Ortiz, 955 F.2d at 769, citing Rodriguez v. Sec'y of

Health and Human Servs., 647 F.2d 218 at 222 (1st Cir. 1981).  I therefore find, that the hypothetical

questions relied on by the ALJ were properly predicated on an RFC that was substantially supported

in the record.

***Erosion of the Occupational Base***

As to erosion of the occupational base, where a claimant has one or more non-strength

limitations that significantly affect his ability to perform the full range of jobs he is otherwise

exertionally capable of doing, exclusive reliance on the Grid is inappropriate and the Commissioner

must carry his burden by other means, typically through the use of a vocational expert.  Ortiz, 890

F.2d at 524 (citations omitted).  "If a non-strength impairment, even though considered significant,

has the effect only of reducing that occupational base marginally, the Grid . . . can be relied on

exclusively," but the need for vocational evidence increases with the  degree of erosion of the

**William Cruz-Martínez v. Michael J. Astrue, Commissioner of Social Security**                     Page 17
Civil No. 11-1946 (BJM)

occupational base. Id. at 524-25 (citations omitted). SSR 85-15 provides for the use of the Grid as

a framework for decisionmaking on solely non-exertional limitations and clarifies policies applicable

in cases involving such limitations. 1985 SSR LEXIS 20. As per SSR 85-15, amongst the criteria

to be considered are a clamant's age, education, work experience, and RFC, as well as those criteria

that Cruz alleges the ALJ did not assess (ability to cope with the demands of any work environment,

ability to deal with changes in a routine work setting, punctuality, attend work regularly, accept

supervision, and remain in the workplace the entire day). (Docket No. 19, p. 13). SSR 96-9p

explains the SSA's policies regarding the implications of an RFC for less than a full range of

sedentary work. 1996 SSR LEXIS 6.

Here, the ALJ did recognize that, although the Grid directed a finding of not disabled, Cruz

had additional non-exertional limitations that impeded his ability to perform a full range of light

work. As per SSR 85-15, "[t]o determine the extent of erosion of the unskilled light occupational

base caused by these limitations, the Administrative Law Judge asked the vocational expert whether

jobs existed in the national economy for an individual with the claimant's age, education, work

experience, and residual functional capacity." The VE answered that there are other jobs in the

national economy that such a person could perform. (Tr. 32, 365-367). Counsel then asked the VE

if a person with all the limitations previously mentioned by the ALJ, plus additional non-exertional

vocational limitations as listed in Ruling 85-15, with an extremely limited tolerance to criticism and

supervision, who is not able to be present at work and sustain attention and concentration for more

than two hours a day, as per Dr. Rojas's opinion at Exhibits 3F and 16F, would be able to function

occupationally in other jobs in the national economy. Counsel specifically asked the VE if he was

familiar with SSR 85-15 (to which the VE answered that he was) and to consider the criteria

mentioned in the ruling, along with Dr. Rojas's and Dr. Pujols's assessments, in determining if other

jobs existed in the national economy that Cruz could perform.  The VE answered that this person

would not be able to perform any job in the national economy.  (Tr. 367-371).  The ALJ concluded

that based on the VE's testimony, Cruz would be able to perform other work in the national

economy.  (Tr. 32).

I find that the matter of erosion of the occupational base was addressed at the hearing with

the VE and in the ALJ's decision, and this argument is therefore meritless.

### SSR 96-8p and the "Good Reasons" Requirement

Cruz also argues (1) that the non-examining physicians did not include a discussion linking

the medical evidence with their RFC assessments as required by SSR 96-8p and SSA-4734-F4, and

consequently the ALJ erred in relying on these assessments (Docket No. 19, p. 20), and (2) that the

ALJ did not offer "good reason" for disregarding treating physician's reports, as per 20 C.F.R. §

404.1527(d)(2).

SSR 96-8p requires that the "RFC assessment must include a discussion of why reported

symptom-related functional limitations and restrictions can or cannot reasonably be accepted as

consistent with the medical and other evidence." 1996 SSR LEXIS 5. Form SSA-4734-F4, a mental

RFC assessment form, is used for function-by-function review.  "In the SSA-4734-F4 RFC

assessment, the medical consultant is to describe the relationship between the medically

determinable impairment and his/her conclusions of RFC which have been derived from the

evidence, including a discussion of why reported daily activity restrictions are or are not reasonably

consistent with the medical evidence." Avery v. Sec'y of HHS, 797 F.2d 19, 29 (1st Cir. 1986).

William Cruz-Martínez v. Michael J. Astrue, Commissioner of Social Security                    Page 19
Civil No. 11-1946 (BJM)

Also, under the "good reasons" requirement of 20 C.F.R. § 404.1527(d)(2), "the notice of

determination must contain specific reasons for the weight given to the treating source's medical

opinion, supported by the evidence in the case record, and must be sufficiently specific to make clear

to any subsequent reviewers the weight the adjudicator gave to the treating source's medical opinion

and the reasons for that weight." SSR 96-2p, 1996 SSR LEXIS 9 at 11-12.  "Medical opinions are

statements from physicians and psychologists or other acceptable medical sources that reflect

judgments about the nature and severity of your impairment(s), including your symptoms, diagnosis

and prognosis, what you can still do despite impairment(s), and your physical or mental restrictions."

20 C.F.R. § 404.1527(a)(2).  An absence of clinical notes supporting a treating source's opinion does

not justify an ALJ's rejection of that opinion. Soto-Cedeño, 380 Fed. Appx. at 2-3.  However, the

portions of an RFC assessment by a treating physician that meet the definition of medical opinion

are subject to the "good reasons" requirement, whereas those parts that address capability to perform

work are not entitled to significant weight because that issue is reserved to the Commissioner. See

Collins v. Astrue, 324 Fed. Appx. 516, 520 (7th Cir. 2009).

On June 21, 2006, Dr. Reboredo prepared a mental RFC assessment on Form SSA-4734-F4.

(Tr. 260-263).  Section III of the form contains an explanation of his conclusions in narrative form,

as required by that section and SSR 96-8p.  It states the impairment (depression and anxiety), the

evidence submitted by Dr. Rojas (symptoms and medical opinion), and a description of Cruz's

mental capacities (alert, focused, conserved cognitive functions, normal demeanor, adequate

behavior, impulse control).  Dr. Reboredo found that Dr. Rojas's medical opinions are not supported

by findings or further explanations, and used evidence submitted by Dr. Caro in determining the

RFC.  (Tr. 262).

**William Cruz-Martínez v. Michael J. Astrue, Commissioner of Social Security**                    Page 20
Civil No. 11-1946 (BJM)

        With regards to the ALJ's decision, page 4 contains the ALJ's specific reasons for the weight

given to Dr. Pujols' medical opinion, and pages 5-6 contain the reasons for the weight given to Dr.

Rojas's medical opinion.  In view of the above, I find that the non-examining physician complied

with SSR 96-8p, and the ALJ's discussion on pages 4-6 constitute "good reasons" because they were

sufficiently specific to make clear the weight the ALJ gave to the treating physicians' medical

opinions.  (Tr. 26-28).

## CONCLUSION

        For the foregoing reasons, the Commissioner's decision is affirmed. Judgment shall be

entered accordingly.

        **IT IS SO ORDERED.**

        At San Juan, Puerto Rico, on this 28th day of November, 2012.


                                                        *s/Bruce J. McGiverin*
                                                        BRUCE J. McGIVERIN
                                                        United States Magistrate Judge